UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00467-RJC

| BETTY WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11); Plaintiff's Memorandum in Support, (Doc. No. 12); Defendant's Motion for Summary Judgment, (Doc. No. 13); and Defendant's Memorandum in Support, (Doc. No. 14). The motions are ripe for adjudication.

## I. BACKGROUND

### A. Procedural Background

Betty Williams ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for supplemental security income under Title II and Part A of Title XVIII of the Social Security Act ("SSA") on March 10, 2014, alleging an onset date of March 4, 2013. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 189–92). Plaintiff

1

later amended her alleged onset date to November 17, 2015. (Tr. 43). Her application was denied first on March 7, 2014, (Tr. 107), and again on February 20, 2015 upon reconsideration. (Tr. 120). Plaintiff filed a timely request for a hearing on April 17, 2015, (Tr. 120), and an administrative hearing was held by an administrative law judge ("ALJ") for the Social Security Administration on January 10, 2017. (Tr. 41).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 28–36). Plaintiff requested a review of the ALJ's decision, but on June 7, 2017, the Appeals Council denied Plaintiff's request for a review. (Tr. 1). Plaintiff exhausted her administrative remedies, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Plaintiff's Memorandum in Support, (Doc. No. 12), were filed on January 16, 2018. Defendant's Motion for Summary Judgment, (Doc. No. 13) and Memorandum in Support, (Doc. No. 14), were filed on March 15, 2018.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under section 216(i) and 223(d) of the SSA. (Tr. 28). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1]

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on November 17, 2015 due to hypertension—trouble sleeping, daily fatigue, confusion—and anxiety. (Tr. 265).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 36). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 35–36).

In reaching his decision, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity from November 17, 2015, the amended alleged onset date. (Tr. 30). At the second step, the ALJ found that Plaintiff had the following severe impairments: "status post right shoulder surgery in December 2015 secondary to a torn rotator cuff, and hypertension." (Tr. 30). At the third step, the ALJ

3

determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 32).

Subsequently, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "light work" as defined by 20 C.F.R. 404.1567(b) except "she can never climb ladders, ropes, and scaffolds." (Tr. 32). The RFC also stated that Plaintiff "can occasionally climb ramps or stairs, and occasionally balance, stoop, kneel, crouch, and crawl. She is further limited to occasional pushing, pulling, and overhead reaching with the dominant right upper extremity. She can have no exposure to excessive vibration or hazardous machinery." (Tr. 32). When making this finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." (Tr. 32). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 32). At the fourth step, the ALJ found that Plaintiff "is capable of performing past relevant work as a development specialist" and specified that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 35). Therefore, the ALJ found Plaintiff not disabled as defined in the SSA. (Tr. 36).

4

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the

responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence....").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal before this Court, Plaintiff argues that the ALJ first erred by failing to give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments. (Doc. No. 12 at 5–14). Plaintiff also argues that the ALJ erred by failing to properly determine the credibility of the testimony of Plaintiff and Plaintiff's mother. (Id. at 14–22). The Court disagrees with both of Plaintiff's arguments, for the reasons set forth below.

### A. The ALJ adequately determined Plaintiff's RFC.

Plaintiff argues that the ALJ erred in determining her mental RFC when the ALJ did not explain why Plaintiff's mild mental limitations that he recognized in his Step 2 analysis do not affect Plaintiff's ability to perform physical work activities. (Doc. No. 12 at 9). Plaintiff bases her argument on the Fourth Circuit case Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Id. at 6–7, 12–14).

6

The case at hand differs from Mascio. In Mascio, the plaintiff had *moderate* restrictions in concentration, persistence or pace. Mascio, 780 F.3d at 638. Here, the ALJ found that Plaintiff had *mild* difficulties in the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence or pace; and (4) adapting or managing oneself. (Tr. 31–32). This Court has previously found that Mascio's holding does not extend to all mental restrictions.[2] Barnes v. Berryhill, No. 5:17-CV-00052-RJC-DCK, 2018 WL 1004746, at *1 (W.D.N.C. Feb. 21, 2018); Brooks v. Berryhill, No. 3:15-CV-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017) (holding that "Mascio dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC."). See also Gilbert v. Berryhill, No. 5:16-CV-00100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (finding that Mascio did not apply to cases of mild difficulties). Due to Plaintiff's mild limitations, the Court finds the ALJ's RFC analysis sufficient. As such, the Court refuses to remand this case on the basis of Mascio.

B. The ALJ Properly Determined the Credibility of Plaintiff and Plaintiff's Mother.

Plaintiff also argues that the ALJ's assessments of her credibility and her

---

[2] There is a split of views amongst district courts regarding this issue. See, e.g., Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (finding that the ALJ failed to provide a detailed assessment of the plaintiff's mild mental limitations in the body of the RFC discussion).

7

mother's credibility are not supported by substantial evidence. The Court begins its analysis by noting that the ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays, 907 F.2d at 1456. Accordingly, the Court gives the ALJ deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.").

1. Plaintiff's Credibility Determination

The ALJ must follow a two-step process to determine a claimant's credibility and whether she is disabled by pain or other symptoms. First, the regulations require "at the threshold a showing by objective evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." Id. at 594 (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)). If the claimant meets this threshold, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. This evaluation must take into account

> not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citing 20 C.F.R. §§ 416.929(c), 404.1529(c)).

8

The Social Security Administration has drafted template language for inclusion in ALJ decisions. See Mascio, 780 F.3d at 638 n.9. The Fourth Circuit criticized this boilerplate language in Mascio, finding that the language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" Id. at 639 (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)). An ALJ's use of the template language, however, does not require a remand when the ALJ properly analyzes the claimant's credibility elsewhere. Id. at 639–40 (holding that use of this language constitutes harmless error if the ALJ "properly analyzed credibility elsewhere").

Plaintiff first criticizes the ALJ's use of boilerplate language and alleges that it is analogous to the scrutinized language in Mascio. The Court recognizes that the ALJ in this case did employ language that is similar to the criticized language in Masico. However, the Court finds the language the ALJ used here distinguishable. In Mascio, the Fourth Circuit criticized the ALJ's use of the following language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above *residual functional capacity* assessment.

780 F.3d at 639 (emphasis added). The Fourth Circuit specifically criticized the ALJ for comparing the plaintiff's alleged functional limitations from pain to the plaintiff's residual functional capacity, which the ALJ had predetermined before assessing the plaintiff's credibility. Id. The Fourth Circuit found that the boilerplate language contradicted the agency's own regulations, which direct the ALJ to compare the

9

claimant's alleged functional limitations and pain to medical and other objective evidence in the record—not to the plaintiff's residual functional capacity. Id. (quoting 20 C.F.R. § 416.929(a): "[An ALJ should] determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work."). Thus, in Mascio, the ALJ got the analysis backward by first determining the plaintiff's RFC and then finding evidence in the record to support his particular RFC conclusion.

Here, the boilerplate language the ALJ invoked comported with the agency's regulations because it compared Plaintiff's alleged functional limitations to the medical evidence in the record:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with *the medical evidence and other evidence in the record* for the reasons explained in this decision.

(Tr. 33) (emphasis added). Thus, the language at issue here differs in a meaningful way from the criticized statement in Mascio.

Moreover, the Fourth Circuit in Mascio did not fault the use of boilerplate language per se—it faulted the lack of a proper credibility analysis: "The ALJ's error would be harmless if he properly analyzed credibility elsewhere. But here, the ALJ did not." 780 F.3d at 639. Unlike in Mascio, the ALJ followed the template language with a detailed and particularized analysis of why he found Plaintiff's

10

prior statements regarding "the intensity, persistence and limiting effects of these symptoms" inconsistent with the medical evidence and other evidence in the record. (Tr. 33).

The ALJ first summarized Plaintiff's subjective statements made at the administrative hearing regarding her alleged functional limitations and pain. Plaintiff alleged that "she has not had much improvement in her right shoulder since surgery" and "is unable to work full time due to continuous pain in her right shoulder and numbness that goes down to her leg." (Tr. 33, 60–67). Additionally, she alleged that "with medication her pain is at a level of a five or six," and "she has headaches from her high blood pressure." (Tr. 33). Next, the ALJ detailed the objective evidence of record, which demonstrated why Plaintiff's statements were inconsistent and not wholly credible.

The ALJ chronicled Plaintiff's history of treatment. He discussed that Plaintiff was first seen for hypertension and right shoulder pain on September 8, 2015. During this visit, it was found that she had not been taking her blood pressure medication for two months and that she had right shoulder capsular swelling with increased warmth and tenderness. (Tr. 33, 482–84). The ALJ noted that Plaintiff went to the emergency room on September 20, 2015 because of pain, tenderness, and restricted range of motion in her right shoulder. (Tr. 33, 506–07). He reported that Plaintiff underwent an MRI on October 30, 2015 which showed "rotator cuff tendinopathy with probable strain of the supraspinatus and infraspinatus with apparent focal full thickness tear of the peripheral

11

supraspinatus." (Tr. 33, 804). He then reported Plaintiff's operative report from December 2, 2015, which indicated that Plaintiff underwent right shoulder arthroscopic rotator cuff repair, acromioplasty, and debridement. (Tr. 33, 804).

Next, the ALJ detailed Plaintiff's post-surgery recovery and rehabilitation. He noted that during a follow-up visit on February 10, 2016, it was found that despite Plaintiff having reduced range of motion, she had relatively good strength with internal and external rotation and supraspinatus testing and was doing well overall. (Tr. 33, 778). He then chronicled Plaintiff's history of physical therapy. (Tr. 33–34). He noted that Plaintiff had been seen for eleven visits as of February 10, 2016, and it was noted that she was progressing well with improved pain. (Tr. 33, 597–99). He then discussed that medical records indicated that as of March 7, 2016, Plaintiff had visited physical therapy twenty-two times. (Tr. 33, 600). The ALJ noted that these reports showed that Plaintiff was demonstrating progress with range of motion and strength, and her right grip strength had improved from ten pounds to twenty-five pounds. (Id.). He further noted that a March 10, 2016 right shoulder follow-up indicated that Plaintiff displayed excellent internal and external rotation and supraspinatus motor test and that her passive range of motion pretty much matched her active range of motion. (Tr. 34, 776).

The ALJ did not stop his analysis at the first reports indicating Plaintiff's symptoms had improved—he elaborated and included even more positive medical reports demonstrating Plaintiff's progression after undergoing her operative procedure and physical therapy. The ALJ noted that a July 6, 2016 follow-up

12

showed *Plaintiff herself* reported physical therapy was successful and her symptoms were significantly decreased. (Tr. 34, 767). The ALJ reported that during this follow-up, the records showed that she still had some limited range of motion, but she had good strength to isometric motor testing of external and internal rotation and abduction. (Id.). The ALJ included findings from three subsequent follow-ups, the two most recent showing that while Plaintiff reported continuing right shoulder pain, she had normal range of motion and strength and 5/5 internal and external rotation strength. (Tr. 34, 429–39).

In light of the above, the ALJ ultimately concluded that while it is reasonable that Plaintiff could have some of the alleged symptoms, they are not of the severity Plaintiff alleges. (Tr. 34). Specifically, the ALJ noted that "[a]lthough [Plaintiff] had her right shoulder repaired secondary to a torn rotator cuff, the record showed after her surgery she had improved strength and improvement of her symptoms with physical therapy." (Tr. 34). This conclusion was consistent with the objective medical findings that the ALJ thoroughly detailed in his decision. Therefore, it was reasonable to find that Plaintiff's testimony regarding the severity of her alleged symptoms—specifically her testimony claiming that she had not improved in her right shoulder since her surgery—was not credible and was inconsistent with the bulk of evidence. Indeed, Plaintiff's hearing testimony contradicts her own prior testimony from physical therapy, in which she reported that physical therapy was successful and her symptoms were significantly decreased. (Tr. 34, 767). Nevertheless, Plaintiff sufficiently accounted for Plaintiff's alleged symptoms by

limiting Plaintiff to "a reduced range of light work with only occasional pushing, pulling, and overhead reaching with the dominant right upper extremity secondary to her reports of pain and evidence of the reduced range of motion." (Tr. 34). In sum, this Court finds that the ALJ properly determined Plaintiff's credibility in light of the objective medical evidence in the record.

2. Claimant's Mother's Credibility

Relatedly, Plaintiff also asserts that the ALJ improperly discounted the testimony of Plaintiff's mother regarding Plaintiff's alleged limitations and abilities. (Doc. No. 12 at 18–22). Plaintiff's mother completed a Function Report – Adult – Third Party, which was incorporated in the record. (Tr. 291–98). In his decision, the ALJ considered this report, which was proper pursuant to SSR 06-3p. This ruling states that parents, among other persons, are considered "other sources." SSR 06-3p. As such, their testimony cannot establish the existence of a medically determinable impairment, but it can shed light into the severity of an impairment and how it affects a claimant's ability to function.

Plaintiff faults the ALJ for discrediting her mother's testimony on the grounds that she was not medically trained and that she was not a disinterested third-party witness due to the nature of her relationship with Plaintiff. However, Plaintiff fails to realize that the "most important" reason that the ALJ did not give significant weight to Plaintiff's mother's testimony was because her testimony was "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. 35). The ALJ noted that the form the Plaintiff's

14

mother filled out, while "mostly incomplete," contained testimony that contradicted Plaintiff's own testimony. (Tr. 35). Plaintiff's mother had indicated that Plaintiff "does not bathe regularly and does not get along well with others," but the ALJ noted that this is disputed by Plaintiff's "own testimony that she took care of patients with no problems at her last job." (Tr. 35). In light of the objective medical evidence detailed above, this Court agrees with the ALJ's credibility assessment in not assigning significant weight to the testimony of Plaintiff's mother.

## IV. CONCLUSION

In sum, this Court finds that the ALJ built "an accurate and logical bridge from the evidence to his conclusion" in determining Plaintiff's RFC and the credibility of Plaintiff and Plaintiff's mother. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). Therefore, substantial evidence supports the ALJ's determination, and thus, remand would be improper.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**.

3. The Commissioner's determination is **AFFIRMED**;

4. The Clerk of Court is directed to close this case.

Signed: September 29, 2018

Robert J. Conrad, Jr.
United States District Judge